[Cite as *State v. Bates*, 2025-Ohio-2014.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Kevin W. Popham, J. |
| -vs- | |
| RONALD L. BATES | Case No. 2024CA0017 |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:     Appeal from the Coshocton County Court
of Common Pleas, Case No.
2024CR0026

JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     June 4, 2025

APPEARANCES:

For Plaintiff-Appellee                   For Defendant-Appellant

CHRISHANA L. CARROLL               JAMES K. REED
Coshocton County Prosecuting Attorney   209 S. Main Street, Suite 801
318 Chestnut Street                      Akron, Ohio 44308
Coshocton, Ohio 43812-1116

*Hoffman, J.*

**{¶1}** Defendant-appellant Ronald Bates appeals the judgment entered by the Coshocton County Common Pleas Court convicting him following jury trial of having weapons while under disability (R.C. 2923.13(A)(3)) and sentencing him to thirty-six months incarceration. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** Bernard Carter, a resident of Coshocton County, Ohio, collected guns which he stored in a safe located in a detached garage on his property. He kept the keys to the safe in a box on top of the safe. Only he and his grandson knew the location of the keys. In 2013, Carter purchased two limited-edition gold-plated pistols for $1,700.00 each. He stored the guns in the safe, inside their individual boxes.

**{¶3}** On February 8, 2023, Carter opened the safe to retrieve cash for use in his excavating business. His cash was missing, and the boxes which contained the limited-edition pistols were empty. Carter reported the theft to the police.

**{¶4}** On May 22, 2023, Appellant contacted Donnie Hughes about purchasing the pistols. The two conducted a discussion of the sale of the guns on Facebook Messenger. Appellant agreed to trade the guns to Hughes in exchange for a .22-caliber handgun and a car for which Hughes did not have a title. Due to the concern with the car's title, Appellant told Hughes if they couldn't complete the deal, Hughes should sell the guns and give Appellant the money. Appellant stated he could not keep the guns because he was a convicted felon. Appellant and a friend went to Hughes's house to

complete the deal. Appellant personally handed Hughes the firearms, and the two completed the trade for the handgun and the car a few days later.[1]

{¶5} Hughes texted Michael Palmer, his girlfriend's stepfather, about purchasing the guns for $2,500 for the pair, or $1,500 for one. The deal seemed "shady" to Palmer, and he suspected the guns were stolen. Tr. 149. Palmer's wife saw a post made by Carter's wife on Facebook concerning the stolen guns, confirming his suspicion the guns were stolen.

{¶6} Police executed a search warrant on Hughes's residence and recovered the guns. When interviewed by police, Appellant admitted he paid Jerome Starner $200 for the guns, executed a trade via Facebook with Hughes, and personally handed the bag containing the guns to Hughes at the time of the exchange.

{¶7} Appellant was indicted by the Coshocton County Grand Jury with two counts of receiving stolen property and one count of having a weapon while under disability. The case proceeded to jury trial in the Coshocton County Common Pleas Court. The jury found Appellant not guilty of both counts of receiving stolen property, but guilty of having a weapon while under disability. The trial court convicted Appellant in accordance with the jury's verdict and sentenced Appellant to thirty-six months incarceration. It is from the August 22, 2024 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION.

---

[1] Hughes pled guilty to receiving stolen property in conjunction with this incident.

II. MR. BATES' CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

III. THE TRIAL COURT'S IMPOSITION OF A MAXIMUM PRISON TERM WAS CONTRARY TO LAW.

I., II.

**{¶8}** In his first and second assignments of error, Appellant argues the judgment convicting him of having a weapon while under disability is not supported by sufficient evidence and is against the manifest weight of the evidence. We disagree.

**{¶9}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

**{¶10}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 1997-Ohio-52, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175 (1st Dist. 1983).

**{¶11}** Appellant was convicted of having a weapon while under disability in violation of R.C. 2923.13(A)(3):

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

{¶12} Appellant argues the State did not present sufficient evidence he possessed the guns in the instant case. He argues he merely acted as a middleman, connecting Jerome Starner to Hughes to enable Starner's sale of the guns. He argues the jury lost its way in finding Appellant possessed the guns.

{¶13} Ownership is not required to prove a defendant did "acquire, have, carry, or use any firearm." *State v. Hudson*, 2017-Ohio-645, ¶14 (7th Dist.) Actual possession may be established by ownership or physical control. *Id.* Although the word "possess" is not used in the statute, to "have" a firearm the defendant must have had actual or constructive possession of the firearm. *Id.*

{¶14} The message Appellant sent to Hughes on Facebook stated, "Hey, I got a couple things your girl's dad would love to have." Tr. 130. Appellant sent Hughes photographs of the guns. While Hughes's version of the facts changed from his initial interview to trial concerning the presence of Starner at the time Appellant brought the

weapons to Hughes, Hughes testified it was Appellant who handed him the guns. He further testified he traded Appellant a car and a .22-caliber handgun in exchange for the limited-edition pistols.

**{¶15}** When interviewed by police, Appellant initially denied having any knowledge of the guns. However, after he was confronted with the Facebook messages, Appellant admitted he purchased the guns for $200 from Starner, reached out to Hughes to sell the guns, and personally handed the guns to Hughes.

**{¶16}** We find the State presented sufficient evidence Appellant possessed the guns. We further find the jury did not lose its way in finding Appellant had possession of the guns.

**{¶17}** The first and second assignments of error are overruled.

III.

**{¶18}** In his third assignment of error, Appellant argues the trial court erred in sentencing him to a maximum term of incarceration of thirty-six months. We disagree.

**{¶19}** We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Roberts,* 2020-Ohio-6722, ¶13 (5th Dist.), *citing State v. Marcum*, 2016-Ohio-1002. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for sentencing where we clearly and convincingly find either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *Id., citing State v. Bonnell,* 2014-Ohio-3177.

**{¶20}** When sentencing a defendant, the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. *State v. Hodges*, 2013-Ohio-5025, ¶7 (8th Dist.).

**{¶21}** "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). To achieve these purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. *Id.* Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

**{¶22}** R.C. 2929.12 lists general factors which must be considered by the trial court in determining the sentence to be imposed for a felony, and gives detailed criteria which do not control the court's discretion, but which must be considered for or against severity or leniency in a particular case. The trial court retains discretion to determine the most effective way to comply with the purpose and principles of sentencing as set forth in R.C. 2929.11. R.C. 2929.12.

**{¶23}** Nothing in R.C. 2953.08(G)(2) permits this Court to independently weigh the evidence in the record and substitute our own judgment for that of the trial court to determine a sentence which best reflects compliance with R.C. 2929.11 and R.C.

2929.12. *State v. Jones*, 2020-Ohio-6729, ¶42. Instead, we may only determine if the sentence is contrary to law.

**{¶24}** A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range." *State v. Pettorini*, 2021-Ohio-1512, ¶¶14-16 (5th Dist.).

**{¶25}** Appellant concedes his sentence was within the statutory range. However, Appellant argues the sentence is contrary to law because the trial court denied his request for a presentence investigation. Instead, the trial court relied on a presentence investigation report filed in Appellant's 2013 case.

**{¶26}** Crim. R. 32.2 provides:

Unless the defendant and the prosecutor in the case agree to waive the presentence investigation report, the court shall, in felony cases, order a presentence investigation and report before imposing community control sanctions or granting probation. The court may order a presentence investigation report notwithstanding the agreement to waive the report. In misdemeanor cases the court may order a presentence investigation before granting probation.

**{¶27}** R.C. 2951.03 similarly requires a presentence investigation report be ordered before a defendant may be sentenced to a community control sanction or granted

probation. Appellant cites this Court to no authority which requires the trial court to order a presentence investigation before sentencing an offender to prison, nor does he cite to any authority requiring a trial court to order a new or updated report when the trial court has a prior report in its possession. Where a trial court sentences a defendant to incarceration without a new or updated presentence investigation report, the sentence is not contrary to law. *State v. Rhoads,* 2018-Ohio-2620, ¶24 (3rd Dist.).

**{¶28}** In the instant case, the trial court reviewed the presentence investigation report filed at the time of Appellant's 2013 conviction. As noted by the trial court, Appellant was incarcerated for more than five of the intervening eleven years. The instant conviction was Appellant's sixth felony conviction. Counsel for Appellant represented to the court Appellant had been a law-abiding citizen after his release from prison for his 2013 conviction, and was employed. Counsel noted it was Appellant's employer who contacted counsel about representing Appellant. Appellant told the court he had not been in trouble in the past eleven years, and he went to work every day. Although the trial court did not have an updated presentence investigation report, the trial court afforded Appellant the opportunity to present updated information on his life following his release from prison in mitigation of sentence. We find the sentence of thirty-six months is not contrary to law.

**{¶29}** The third assignment of error is overruled.  The judgment of the Coshocton County Common Pleas Court is affirmed.

By: Hoffman, J.

Baldwin, P.J. and

Popham, J.  concur